**FILED**
**Mar 04, 2019**
**02:58 PM(CT)**
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| JOSEPH FINGERS,<br>    Employee,<br>v.<br>NORTEK GLOBAL HVAC, LLC,<br>    Employer,<br>And<br>NEW HAMPSHIRE INS. CO.,<br>    Carrier. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2017-07-0589<br><br>State File No. 23687-2015<br><br>Judge Amber E. Luttrell |

## COMPENSATION HEARING ORDER

This matter came before the Court on February 6, 2019, for a Compensation Hearing. The parties stipulated Mr. Fingers sustained a compensable injury to his right hip and is entitled to permanent partial disability and future medical benefits. The legal issue is whether Mr. Fingers established by a preponderance of the evidence that he is entitled to an award of increased benefits. For the reasons below, the Court holds he did not establish entitlement to increased benefits, he sustained a permanent partial disability of three percent to the body as a whole, and he is entitled to future medical benefits.

### History of Claim

Mr. Fingers worked for Nortek Global as a machine operator on the night shift. He testified that on Thursday, March 26, 2015, he was walking back from break when a forklift struck him from behind and injured his right hip.[1] Mr. Fingers reported his injury, and Claudette McCullough, the human resources manager, offered him a panel from which he selected Dr. James Naifeh.

Later that day, Mr. Fingers saw Dr. Naifeh for complaints of low-back and right-

---

[1] During scheduling hearings, Mr. Fingers also raised an alleged psychological injury. However, the Dispute Certification Notices only referenced a right-hip injury, and he presented no proof concerning a psychological injury. Thus, the Court will not consider this issue.

hip pain. Dr. Naifeh examined him, released him with light-duty restrictions, and referred him to an orthopedic specialist. Ultimately, Mr. Fingers was referred to Dr. Thomas Byrd, a hip specialist.

Nortek introduced Dr. Byrd's deposition testimony into evidence, which was the only medical proof at the hearing. Dr. Byrd saw Mr. Fingers, reviewed his MRI, and recommended surgery, which he later performed. On March 29, 2016, he performed extensive hip surgery to debride the labrum and cartilage damage and remove loose bone fragments in the joint. During follow-up treatment, Mr. Fingers underwent physical therapy and an injection of the hip joint but still complained of pain. Dr. Byrd eventually released him at maximum medical improvement on November 14, 2016, and assigned permanent restrictions consistent with light- to medium-physical-demand level work based on a functional capacity evaluation. Dr. Byrd also recommended pain management for Mr. Fingers' continued symptoms. The medical records introduced into evidence indicated Mr. Fingers received some pain management from Dr. Kyle Payne.

Regarding permanent impairment, Dr. Byrd testified within a reasonable degree of medical certainty that Mr. Fingers retained a three-percent permanent impairment to the body based on the Sixth Edition of the AMA Guides. Mr. Fingers disagreed with Dr. Byrd's impairment opinion given his permanent restrictions; however, he did not introduce any other impairment opinion.

*Request for Increased Benefits and Mr. Fingers' Termination*

Regarding Mr. Fingers' claim for increased benefits, Ms. McCullough testified his violation of Nortek's attendance policy led to his termination. She explained its policy that employees can be terminated for attendance when they exceed four points and that he was trained on the policy during orientation. Before Mr. Fingers' injury date, he had 3.5 attendance points.

The parties agreed Ms. McCullough spoke to Mr. and Mrs. Fingers after Dr. Naifeh saw him and released him to return to work on light duty on March 26. Mr. and Mrs. Fingers informed Ms. McCullough that he would not return to work for his evening shift that day. He testified he was in too much pain in his hip to lift objects. Mr. Fingers did not return to work and was assessed one attendance point.

The parties' testimony on this issue only differed regarding whether Mr. Fingers would be assessed an attendance point for missing his shift on March 26. According to Ms. McCullough, she informed both Mr. and Mrs. Fingers that he would be assessed one attendance point if he failed to report to work, and Nortek could accommodate his light-duty restrictions. Mr. Fingers first acknowledged he knew he would receive a point when he did not report on March 26, but he later stated either Ms. McCullough or Glenn McKee, his supervisor, told him they would not count March 26 against his attendance.

2

Ms. McCullough and Mr. McKee denied telling Mr. Fingers he would not receive a point.

The parties agreed Mr. Fingers was not scheduled to work on March 27 through 29. He was next scheduled to work on Monday, March 30; however, he did not report to work on Monday, Tuesday (March 31), or Wednesday (April 1). Ms. McCullough called Mr. Fingers on April 1 before his scheduled shift to advise him he had 6.5 attendance points and would be terminated if he did not return to work that day. Mr. Fingers testified he told her he did not care and did not return. Nortek terminated him on April 2. According to Ms. McCullough, Nortek would not have terminated Mr. Fingers and would have accommodated his restrictions had he returned to work on April 1 or any day before.

Mr. Fingers acknowledged he did not ask Ms. McCullough which light-duty job was available to him and stated he was not going to return to work regardless of the position offered. He conceded he made the choice not to return to work on restrictions. Further, Mr. Fingers did not dispute any attendance points besides the one assessed on his injury date. He testified he felt mistreated overall because he was not given enough time to recover from his injury. He stated he remains in pain and does not think anyone would hire him.

### Findings of Fact and Conclusions of Law

"At a compensation hearing where the injured employee has arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is, in fact, entitled to the requested benefits." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015); *see also* Tenn. Code Ann. § 50-6-239(c)(6) (2018).

*Medical Benefits and Extent of Disability*

The parties stipulated that Mr. Fingers sustained a compensable right-hip injury. Therefore, the only issue is Mr. Fingers' permanent impairment and whether Nortek is obligated to pay any increased benefits. Further, as this is a compensable claim, the Court holds Mr. Fingers is entitled to reasonably necessary future medical treatment recommended by his authorized treating physician, Dr. Byrd, under Tennessee Code Annotated section 50-6-204.

The only medical proof regarding permanent impairment came from Dr. Byrd, who concluded Mr. Fingers sustained a three-percent permanent impairment. While Mr. Fingers disagreed with Dr. Byrd's impairment opinion, he presented no contrary expert medical evidence to rebut this opinion by a preponderance of the evidence. Thus, the Court holds Mr. Fingers sustained a three-percent permanent impairment to the body as a whole for his hip injury.

3

Tennessee Code Annotated section 50-6-207(3)(A) provides Mr. Fingers is entitled to an initial award of permanent partial disability benefits for the value of his permanent impairment rating multiplied by 450 weeks. This is called the "original" award. Thus, Mr. Fingers' original award is three percent to the body as a whole or thirteen and one-half weeks of benefits. At his stipulated compensation rate of $337.96, his original award totals $4,562.46.

*Increased Benefits*

An employee may request increased permanent benefits beyond the impairment rating, if, at the end of his initial compensation period, he has not returned to work or has returned to work but is receiving wages or a salary less than 100 percent of the wages or salary he received from his pre-injury employer on the date of injury. However, an employee is not entitled to recover additional benefits when: (1) he voluntarily resigns for reasons unrelated to the work injury; or (2) the loss of employment is due to the employee's misconduct connected with the employment. Tenn. Code Ann. §50-6-207(3)(B), (D).

Here, it is undisputed that Mr. Fingers was not working for any employer earning 100 percent of his pre-injury wages when his initial compensation period expired. However, Nortek argued Mr. Fingers is not entitled to any increased permanent benefits beyond his impairment rating because he was terminated for misconduct for violation of its attendance policy. The Court agrees.

The Court finds Nortek offered Mr. Fingers a job within his light-duty restrictions following his injury and gave him every opportunity to return, but he refused to attempt to work. The undisputed proof showed Mr. Fingers accumulated 3.5 attendance points before his injury date. Under its policy, Nortek could have terminated him after he refused to attempt light duty on March 26 and was assessed one attendance point. However, in an effort to work with him, Ms. McCullough contacted Mr. Fingers on April 1, advised him he was at 6.5 points and subject to termination, and asked him to return for his shift that day. Ms. McCullough credibly testified that, had he returned to work, Nortek would not have terminated him and would have accommodated his restrictions. Instead, Mr. Fingers told Ms. McCullough he "did not care" and refused to return.

Nortek contended that an employer shall not be penalized for enforcing its work-related policies if a court determines, "(1) that the actions allegedly precipitating the employee's dismissal qualified as misconduct under established or ordinary workplace rules and/or expectations; and (2) that the actions were, as a factual matter, the true motivation for the dismissal." *Barrett v. Lithko Contracting, Inc.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 70, at *9 (June 17, 2016) (internal citations omitted). Here, the Court finds Mr. Fingers' actions violated Nortek's attendance policy and qualified as misconduct under ordinary workplace rules. Further, the Court finds Mr. Fingers offered

4

no evidence to dispute his attendance points or to demonstrate any improper motivation for his dismissal. The Court finds his violation of Nortek's attendance policy was the true motivation for his termination. Thus, the Court holds Mr. Fingers is not entitled to an award of increased benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Fingers shall recover from Nortek Global HVAC, LLC, permanent partial disability benefits of $4,562.46.

2. Mr. Fingers shall receive future medical benefits pursuant to statute.

3. Nortek stipulated at the hearing that Mr. Fingers is owed additional temporary total disability (TTD) benefits of $678.86 due to the underpayment of benefits based on an incorrect compensation rate. Nortek stated it would forward Mr. Fingers a check for the additional TTD following the hearing. If Nortek has not satisfied the additional TTD payment by the entry date of this order, the Court holds Nortek shall pay Mr. Fingers additional benefits of $678.86.

4. Costs of $150.00 are assessed against Nortek Global, or its insurance carrier, under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2018), to be paid within five days of this order becoming final. It shall also file a Form SD-2 within ten days of the entry of this order.

5. Absent an appeal, this order shall become final thirty days after issuance.

**ENTERED March 4, 2019.**

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

APPENDIX

Exhibits:
1. First Report of Injury
2. Joint Submission of Medical Records
3. Dr. Byrd's deposition transcript
4. Orientation checklist
5. New hire checklist
6. Separation Notice

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Scheduling Order (April 13, 2018)
4. Order Granting Motion to Withdraw as Counsel
5. Order Setting Scheduling Hearing
6. Scheduling Order (August 15, 2018)
7. Amended Scheduling Order (August 16, 2018)
8. Post-Discovery Dispute Certification Notice
9. Pre-Compensation Hearing Statement
10. Employer's Pre-Trial Brief
11. Employer's Notice

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on March 4, 2019.

| Name | USPS | Email | Service sent to: |
|------|------|-------|------------------|
| Joseph Fingers, Employee | X | X | kalbino15@bellsouth.net<br>636 Melton Ave.,<br>Dyersburg, TN 38024 |
| Lee Anne Murray,<br>Employer's Counsel | | X | leeamurray@feeneymurray.com<br>shelia@feeneymurray.com |

Penny Shrum, Clerk of Court
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6